Case number 15-1001, Alberto Ignacio Ardila Olivares, Petitioner v. Transportation Secretary Administration, and John S. Pistol, at his official capacity as Administrator of the Transportation Security Administration. Mr. Goldstein for the Petitioner, Ms. Kerserman for the Respondent. Good morning, Your Honors. Jason Goldstein on behalf of the Petitioner, Alberto Ignacio Ardila Olivares. May it please the Court. Your Honors, we're here today because Mr. Ardila Olivares applied for the opportunity or the right to train to receive his type rating certificate in a particular aircraft under the Federal Aviation Regulations. And in this particular case, Mr. Ardila Olivares first applied for this license through the Alien Flight Student Program, which is over... Let me... I think we all know the facts. Tell me, are you claiming your brief is hard to sort out on this point? Are you claiming the declaration is not something that we can consider? You spend a lot of time suggesting what you spend time on. Focus here. It seems to be that the declaration, even as we look at it, doesn't afford reasoned decision-making. There's a little bit in your brief about you can't have after-the-fact reasoning submitted, but you don't really highlight that as a point? Do you mean to say that, that this cannot come in or not? And for clarification, Your Honor, what we try to do here, to make it clear, is that the declaration by Ms. Barra can be considered by this Court. There's only one authority. That it can be considered by the Court? Yeah. Well, it's... I'm curious why you think it can't be. Well, we're not saying... Well, to the contrary, we're saying that there's no authority that says the Court cannot... See, on the one hand, you're arguing post-hoc rationalization, which is a foreclosure, which means generally under APA law, an agency cannot give its reasons after the fact. And the cases that they cite are not on point. I'll raise it with them. And I did read you correctly not to really be jousting with them over that. So you're conceding we can look at it, but I still would like to know how so, because we might have to write an opinion, and that's not what APA law is. Sure. And, Your Honor, we're not conceding that point. It's just that I think what I was going to say is that the declaration by Ms. Barra, at best, is illustrative. But we do say in our brief where we state that post-hoc rationalization... Yeah, but your brief doesn't really effectively argue that the Court can't look at this. Well, then I'll agree with Your Honor that the Court can't look at that. Obviously, if that's Your Honor's position, we'll certainly adopt it. No, that's not Your Honor's position. I'm trying to figure out what your position is. Our position is... APA law is, even the case they cite, a habeas case, states what the APA law is. Harvey, it says APA law is. We have to send it back if this is an after-the-fact rationalization. And the Court says, but this is habeas, and that would be a waste of time, so we'll go ahead and do it here. But I'm not getting it. These other cases that are being cited, it was counsel offering testimony. I mean, they're not relevant to the question we have here. Can an agency, after the fact, submit the reasons without showing that the reasons they're now submitting were contemporaneous, like Pitts suggests and Torres suggests? Those reasons were there, and that's what we looked at, and we're just confirming for you that our first rejection was based on that information. Precisely, Judge. What we're saying here is that that did not occur. That, in fact, the record contemporaneous with the decision made by the TSA is devoid of any facts or information that would support Ms. Barr's declaration. So her declaration is not merely clarifying the record that was before the TSA at the time in which it was rendering its decision with respect to Mr. Olivares' application in 2014. It's rather, in our humble opinion, self-serving and tries, in fact, to create post hoc rationalization. Can we go back a second in that? Suppose that the TSA decision had taken the form substantially of the VARA declaration. In other words, the same reasoning that is stated there had been stated initially. Would you have a case? In other words, if that's what your rejection letter said. So I understand the question correctly. Is the question if the rejection letter had, in fact, stated what Ms. Barr had provided in her declaration, would we still have our case? Yeah. Oh, no, I'm sorry. Yes, we would still have our case. Because? Because what's happened here, and I think is frankly dispositive, is that the TSA, based on the same information available to it, had approved Mr. Olivares for training in 2011. That's acknowledged in the VARA declaration. I'm sorry? That's acknowledged in the VARA declaration. Well, we think that the VARA declaration actually doesn't acknowledge that she had before her, in 2011, the plea bargain that Mr. Ardilla had taken with respect to the narcotics trafficking. That, in fact, the only time it's alluded to, at best, by the TSA is in their response brief, in some parenthetical, somewhere within the body of the brief. In other words, we think that, as part of a number of our arguments, one of the main arguments is that there was a failure by the TSA, notably Ms. Barr, to consider that the TSA had previously already granted Mr. Ardilla Olivares approval. But the whole thrust, it seemed to me, of the declaration was that there were changing circumstances. The report that made them believe they must be more strenuous in their efforts, and therefore they were more strenuous. We think that that's unavailing because if you look at whether or not there's substantial evidence here, we think that the, namely, the two additional factors, one is the purported address that the TSA believed that Mr. Ardilla had in Massachusetts, tended to show that he reentered the United States impermissibly, and also some suspected connection to arms trafficking back in 1998. These two items alone are suspect at best. First, the TSA did nothing to ascertain whether or not Mr. Ardilla, in fact, resided at address. In fact, it was his brother who resided there, and as his declaration shows, he was receiving mail there because of issues with receiving mail in Venezuela. In view of the strange information about the 9-11 hijackers, one can understand an agency being concerned about a U.S. address for a deported alien, right? I mean, I agree it would be much better if they had looked into it, but even with the explanation of the brother, it's not nothing. I think Your Honor is correct. However, respectfully, I believe in this instance, it was incumbent upon the TSA to do just a little bit of research, and it would have been very easy to determine that Mr. Olivares did not reenter the United States. It's not something that's easy for him to do. He's done nothing in the past to indicate that he has, in fact, reentered the United States, and frankly, it's not uncommon for an airman to hold an address that's different from where he may actually be residing at the time. They were saying all things considered. They're looking at all of it now. It's a total record. I mean, you're faulting them for being a little bit ragged in catching up with what they had. They did, but Lord knows TSA has got a lot on their plate now. And so you're right. It looks strange. It took them a while to figure out what they really had. So it seems to me we have to look at what they thought they had when they finally put it all together. They didn't have it all together initially. So what? They had it all together, and then they wrote the declaration. I'm more interested in whether or not the declaration is properly before us. Right. And I agree with Your Honor. I don't think that the declaration is properly before us because I don't think there's evidence in the record to show that the TSA had this information at that time. It appears at the time that it made its decision. In other words, it appears that the TSA's decision was initially based on Mr. Ardilla's immigration status, and that subsequent to that there was just simply a denial of his request. Well, Your Honor, I mean, you may be right, but the words are, pursuant to the revised procedure, Petitioner was subject to an investigation which revealed the following. Now, I take your point that they had in their records. Actually, I'm not 100% sure they had in their records the guilty plea to the narcotics. But the other things there's no reason to think they knew about, right? Well, it's unclear. That's the question because Ms. Vara's declaration makes unclear whether or not the TSA had before it the conviction that preceded the 2011 approval, even though we know, and I don't think the TSA is going to argue, that they didn't know in 2011 that he had that conviction. And I find it, and I think it's quite curious that the TSA now claims that it had before it this alleged attenuated connection to arms trafficking from 1998, nearly two decades ago, that it now finds when taken into consideration with the other two factors, the U.S. address and the prior conviction, now makes Mr. Ardila a security threat, and notably before this Court, if I may, and I reserve two minutes to rebuttal, but if I may very briefly. That's a different question. You're assuming this and saying that's not reasoned decision-making. It's different from the questions whether we can even consider at all, unless it's based on records that were before the agency when they made the rejection decision. Right, and I think that if this Court finds, only if this Court finds that Ms. Vara's declaration somehow is illustrative of what the Court believes was in fact before. Why didn't you argue that? I'm sorry? Why didn't you argue that? You're not arguing that. I'm feeding that to you, and that's because I'm concerned about the law, and I don't think we should go crazy in stating APA law, but that's not your argument. I believe we did. You're arguing on the merits of the declaration in your brief. I read it many times, because the first thing that leaped out at me, how does this declaration get here? And you're arguing that it's not good reasoning, as opposed to a whole section should have been, and you can't consider this, and TORUS doesn't cover this situation, because they're not showing this declaration is based on materials that were before them when they made the rejection. I'll ask them that. It seems to me that's as far as we go with the law. Right. I agree with you, Your Honor. I do believe that in our initial brief, we did, in fact, argue that with respect to post-hoc rationalization. Post-hoc rationalization never played out anywhere. I understand what you're saying. You said post-hoc rationalization, then you go on to debate whether the declaration is adequate. That was in the alternative, and if it wasn't clear, let me make it clear. It wouldn't have been nice if you had put it in the alternative. Right. And so we're making that, let me make that clear now, that that's in the alternative argument, that should this court find the declaration acceptable and illustrative, then we believe that the court needs to find whether or not there was reasoned decision making and a rational connection between the evidence before the TSA and its ultimate conclusion that Mr. Ardila should be denied, irrespective of his prior approval of his training request in 2011. We'd like to reserve, if we may, two minutes for rebuttal. If there are no further questions. Okay. Thank you. I've given you my concerns. I mean, you're, I don't know how the declaration comes in, and this leaped out at me immediately, and I looked at what you were citing. Harvey's not on point. Harvey makes it very clear that they did what they did there because the court thought, in a habeas situation, we don't have to go with the normal APA rules. The best you've got is Torres, which goes back to Pitts, and Torres says that the late declaration was based on internal memorandum upon which it was based, and your declaration doesn't say that we're merely confirming that this is the information that the rejection was based upon, and I don't know any other law that allows you to submit like this. Your Honor, Giffrey allows us to do this. These facts are very similar to the facts in Giffrey, and if you go to the underlying computer records in this case, those records talk about the same facts that the very declaration talks about. I'm looking at JA 49 and 50. They talk about the conviction. They talk about the ATF investigation. The court looked at classified information that was purported to be classified from the outset in Giffrey, and they said we can look at that in camera here. That's not this case. You're not suggesting that this is classified information. Giffrey's not on point. Your Honor, in Giffrey. Let's take Giffrey out, okay? I understand what you're trying to argue on Giffrey. There's no case law that I can find, and maybe you've got it. There's no case law that I can find that's allowing what you're trying to do. Oh, we'll give you the reasons now. You're right. That first rejection was kind of stupid. We didn't say anything. But now let us tell you. The whole process of 5E is to allow the other side to have information to understand what the agency's doing. Your Honor, Giffrey involved a declaration that was submitted to the court that provided the basis for the agency's decision. Because it was classified information and it had to be read in camera. It isn't something you'd give to a party. There were two things in Giffrey. There was the declaration by the agency's decision maker which referred to the classified information which was submitted in camera, and the court reviewed that declaration from the decision maker. Here, in any event, the records at the time, the computer records, explain the same things that the Vera declaration talks about. They talk about the ATF investigation. They talk about the address, and they talk about the criminal conviction, and they conclude in those computer reports that he presents a threat to national and aviation security. Now, the Vera declaration explains more, connects dots, but it's very clear from the record that that is what the agency was looking at at the time. Really? Where in the declaration? Can you take us through that? Yeah, take us through that. Certainly. We're missing that one. Okay, so on pages 49 and 50, that's the computer records that I'm talking about, and that lays out the results of the investigation. So it mentions the drug conviction, and then it says there was an investigation that related to candidate or appears to relate to candidate where the suspect was subject rather. Where are you on page 49? I'm sorry. Now I'm on page 50. I just started on page 49. So I'm on this first full paragraph on page 50. It discloses the text record of the investigation that appears to relate to candidate, and it says he was associated with the aircraft that arrived in Aruba, was searched by local authorities, had six weapons, and half a million dollars were reported to have been seized. His associate was arrested. Petitioner here alleged to have departed. He should be detained and questioned regarding the seizure. And this indicates, this confirms that this is what the agency was looking at before it wrote the rejection? That's right. This is the computer record that shows what the agency found, and then if you go to the front of this record on page 47, you see the outcome, deny threat to transportation national security. So these are the contemporaneous records. They may not connect all the dots. They're not required to, but there's no need to remand for a decision that looks like the Vera Declaration that does connect every dot. Counsel, in your brief, you write off 555E by citing a case that says it's important for judicial review. It does say it's important for judicial review. It doesn't say, and therefore we don't have to pay any attention to it. But you seem to be, that's the inference you seem to draw. I do think that we satisfy 555E here and that we have both the result and the basis for the decision. This court hasn't looked at what 555E means in the specific context where there are typically national security reasons that would prevent disclosing the underlying facts. You didn't invoke that. I'm sorry? Did you invoke that as your explanation? Yes, Your Honor. Where? In the rejection? You said there are reasons that we're not going to reveal to you because of national security? Oh, no, I'm sorry. I misunderstood the question. In our brief, we explain that in this context, we have satisfied 555E because of the national security reasons that are typically here. Now, in this case, of course, there is, this is happenstance that we actually could disclose all of the reasons. And in this case, we do have the contemporaneous computer records and the declaration that explains the basis for the agency's decision. So, under the, yes, Your Honor? You had started off, I think, providing us a roadmap for why this was really just clarifying what was the contemporaneous basis for their decision. And my question is, where in the declaration does it say that? Right. So, the declaration explains that it's, the declaration says that it is providing the basis for the decision. She says, I concluded, based on all the foregoing information, this is paragraph 16 on page 54, based on all the foregoing information, which is the information disclosed in the investigation, she doesn't say that's recorded in the computer records, but, of course, you know, it is. She didn't say based on the information disclosed. You're adding? No, you're saying it's implicit, although she doesn't explicitly say, you know, our decision was based on, it just says this information. So, I want to be very careful here. I'm not sure my answer was clear. She says this information, which is the information disclosed in the investigation discussing paragraph 14, right? So, paragraph 15, this information viewed as a whole demonstrated petitioner's willingness to consistently disregard the law and to use the aircraft for criminal activity in opposition to U.S. security interests. This information, again, the information found in the investigation. What you're saying is these computer records in her declaration, she's actually reciting or summarizing those documents. Well, she does, right here in paragraph 14, summarize the factors found in the investigation, and then she concludes, paragraph 16, based on the foregoing information, I concluded, that's explaining her decision. She concluded when she made the decision. When she did it, after the fact. No, she concluded petitioner posed a threat to aviation national security and denied his request on November 15, I'm sorry, November 5, 2014. She said she concluded it on November 5, 2014. And, of course, there is a presumption of regularity in this kind of sworn declaration by the agency decision maker. No, I mean counsel, there's a larger principle here. For us to let this get out of hand in the way you're opposing it would wreak havoc in administrative law. To have the agency say, well, you know, we'll explain it now if you want it. That's not what 555E means. That's not what administrative law is about. Agencies are supposed to give reasons, unless there are security risks or some other justification, at the time when they issued their decisions, otherwise it goes back. Just like Harvey says, the case you principally rely on. Well, I think that it's important to look at the specific context of this statutory scheme. This is a case in which Congress didn't create any rights for the alien, so that the decision goes to the flight school. Yeah, but Congress did enact 555E. But it doesn't make sense to think that Congress was creating a situation where somebody's personal information would be sent to the flight school, especially when that information in the mine run of cases is going to involve protected information. And even going through the process of scrubbing that, deciding what can be released, does raise a risk of releasing protected information. So what kind of opinion are you proposing we write? That we're in the TSA area, the agency should feel free to do whatever they're comfortable with? I propose that this Court follow Giffrey, look at the agency's declaration, which is consistent with the contemporaneous computer records, and say that... Giffrey involves an invocation of confidential information. It's a very specific case. It's an exception to the rule. There aren't any other cases you're citing. Harvey, which you lead with, is absurd. It's an absolutely absurd, it's an embarrassing citation, because the Court says just the opposite of what you want them to say. They say we'll skip the normal rule because it's a habeas case. That's embarrassing for you to submit that to us. Your Honor, Harvey says, or Giffrey says, that we don't need to remand this case to the agency... In the context of habeas. That case is in the context of habeas, but it makes clear that you don't need to remand for the agency to come up with the same decision that they already have. We cited the cases that we are aware of on this, but of course Giffrey is our strongest case. Giffrey, I do want to distinguish between the classified information in Giffrey, which was submitted in camera ex parte, and the declaration, which was simply submitted publicly to the Court. And was what the Court looked at for the basis of the decision. The cases that we cite also make clear that this kind of decision doesn't... This isn't what the Court is thinking of when it talks about a post hoc declaration, because this is something that is based on, that explains the decision at the time. And of course, going back to what Petitioner is arguing... You're saying this is simply Torres. I'm saying this is simply Giffrey, but going back to what Petitioner is arguing... Now I'm really trying to figure out what you're saying. Why is it not Torres? I think that Giffrey is our strongest case. Because? Because in that case the Court reviewed the agency's declaration submitted in the Court of Appeals for the basis for the agency's decision. But going back to what he argues, he's not arguing in his brief, as Your Honor pointed out, that the Court can't review this declaration. He's arguing that this decision was made on the basis of his immigration status. And that is simply incorrect, looking at the documents at the time. The computer records, the letter, and the declaration all make clear that this is a decision that was made on the basis of his security status. I see that I'm out of time. Can I ask you just something else that's related to this, I think, which is that the letter, as I read it, says TSA is unable to determine whether or not... ...a threat to aviation or national security. So the denial letter is actually different from what is said in the declaration. Well, any ambiguity that is in the declaration letter that comes out of that double negative is clarified by the declaration, which says exactly what the decision-maker found, that she did find that he did present a risk to... So that ambiguity has been clarified. If there are no further questions, I support to deny the petition. All right. I know Mr. Goldstein was out of time, but we will give you two minutes for rebuttal. Thank you, Judge. Very briefly, just to address the points that were raised by counsel for the TSA, first of all, the Jeffrey case, the court there was considering highly classified information in camera ex parte, unlike in this case where the entirety of the record that was filed was a public record. Nothing has been submitted under seal or nothing has been claimed to be of sensitive nature such that it could not, in fact, be disclosed to either a flight school or Mr. Olivares himself. If that were the case, then I think we would see findings under seal in this particular case. Also, as Judge Brown notes, the decision by the TSA that was issued contemporaneously to Mr. Olivares states, in fact, that the TSA is unable, quote, unable to determine that you do not pose a threat to aviation or national security, end quote. Of course, Mr. Olivares' declaration provides more certainty. However, notably, the statute that is on .49 CFR 1540.117, subsection 3, essentially states that there is a threat where one is suspected of or known to pose a threat to transportation or national security. We submit to the court that the statement provided to Mr. Olivares contemporaneous with his denial is not to hand him out in any way. It cannot be read in any way to satisfy that reading of the statute. There's nothing that indicates that Mr. Olivares was suspected of being a threat to transportation or national security, or certainly not that he was known to be a threat. Ms. Barra's attempt to remediate this fatal defect is unavailing given that it's now at this late juncture. And we rest on our remaining arguments on our brief and our reply brief. I respectfully request that this court remand with instructions for the TSA to adhere to the law in reviewing Mr. Olivares' request for training under the EFSB.
judges: Brown, Edwards, Williams